April 12, 1979

## 79-24 MEMORANDUM OPINION FOR THE ATTORNEY GENERAL

### Presidential Appointees—Resignation Subject to the Appointment and Qualification of a Successor

This responds to your inquiry whether the head of an executive agency can submit a resignation to become effective only upon confirmation and appointment of his or her successor. We believe that he can.

The submission of such a resignation effective only upon the confirmation and appointment of a successor does not limit, or impinge on, the President's powers. The head of an executive agency is an executive officer; he serves at the pleasure of the President and is subject to the President's illimitable removal power. *Myers* v. *United States*, 272 U.S. 52 (1926). A resignation effective only upon the confirmation and appointment of the successor, therefore, does not affect the President's power to remove the resigning officer prior to the appointment of his successor.

An officer serving at the pleasure of the President is removed by operation of law when the President appoints his successor by and with the advice and consent of the Senate. *Blake* v. *United States,* 103 U.S. 227, 237 (1881); *Parsons* v. *United States,* 167 U.S. 324, 327 (1897); *Quackenbush* v. *United States,* 177 U.S. 20, 25 (1900); 39 Op. A.G. 437, 439 (1940). This, however, does not render a resignation effective upon the confirmation and appointment of a successor a meaningless tautology. To the contrary, this form of resignation obviates a period of vacancy in the office between the resignation and the appointment of a successor.

Article II, section 2, clause 1, of the Constitution provides that the President shall nominate and appoint by and with the advice and consent of the Senate officers of the United States; Article II, section 3, provides that the President shall commission all such officers. In *Marbury* v. *Madison,* 1 Cranch 137, 155–157 (1803), Chief Justice Marshall expounded on the three-step appointment process envisaged by the constitutional provisions. First, there is the nomination by the President; second, the Senate gives its advice and consent to the proposed appointment (confirmation); third, the President, having obtained the advice and consent of

the Senate, makes his appointment of the officer, who is then commissioned. It is apparent that the appointment process may consume a considerable length of time.

We have in the past examined the questions whether a prospective appointee to an office can be nominated and confirmed while the incumbent is still in office, and whether a resignation may be submitted to take effect at a future date. Both questions were answered in the affirmative. A copy of the memorandum on the subject is attached.

Beginning with the earliest days of the Republic, Presidents have submitted nominations to the Senate and the Senate has given its advice and consent to appointments while the incumbent was still in office. Attached memorandum and Appendix III. Moreover, the President's power to nominate and the Senate's power to confirm are not dependent on the existence of an actual vacancy. Resignations were submitted and intended to be effective at some future date. Memorandum and Appendix III. Judges have submitted their resignations effective upon the appointment of their successors at least since the resignation of Mr. Justice Gray of the Supreme Court in 1902. Memorandum Appendix I. Also, this type of resignation was not unusual in judicial resignations in the 1960s.

In 1975, President Ford accepted the resignations of the Secretary of the Interior and of the Secretary of Defense "effective upon the appointment and qualification of your successor."

We conclude that there is no legal obstacle to the resignation of the head of an executive agency in the manner you suggest. In order to avoid a vacancy in the office if, subsequent to the appointment and with the advice of the Senate, there should be a delay in the commissioning or the taking of the oath of office, we would suggest that the resignation be conditioned on the appointment and qualification of the successor.

JOHN M. HARMON
*Assistant Attorney General*
*Office of Legal Counsel*

Attachments

## MEMORANDUM

## Re: Power of the President to Nominate and of the Senate to Confirm Mr. Justice Fortas to be Chief Justice of the United States and Judge Thornberry to be Associate Justice of the Supreme Court.

On June 13, 1968, Chief Justice Warren advised President Johnson of his "intention to retire as Chief Justice of the United States effective at your pleasure." In his reply, dated June 26, the President stated, "With your agreement, I will accept your decision to retire effective at such time as a successor is qualified." On the same day Chief Justice Warren sent to the President a telegram in which the Chief Justice referred to the President's "letter of acceptance of my retirement," and expressed his deep appreciation of the President's warm words.[1]

On June 26, the President also submitted to the Senate the nominations of Mr. Justice Fortas to be Chief Justice of the United States vice Chief Justice Warren, and of Judge Thornberry, of the United States Court of Appeals for the Fifth Circuit, to be Associate Justice of the Supreme Court vice Justice Fortas. 114 CONGRESSIONAL RECORD (daily ed. June 26, 1968) S7834.

Questions have been raised as to the power of the President to make and of the Senate to confirm these nominations. The primary objection is based upon the assertion that there is at present no vacancy in the office of Chief Justice, and that nomination and confirmation of Mr. Justice Fortas is therefore improper. Secondarily, there seems to be an objection that nomination and confirmation of Judge Thornberry cannot be accomplished in these circumstances because the office to which he has been named is not yet vacant. ·

---

[1] *See* Appendix I, Nos. 1–3 for the texts of the letters and telegram exchanged between Chief Justice Warren and the President. The letters appear in 4 Weekly Compilation of Presidential Documents 1013–14.

Neither objection appears to be well taken. The terms of Chief Justice Warren's retirement, established in the correspondence between him and the President, are that the Chief Justice's retirement will take effect upon the qualification of his successor.[2] Judge Thornberry has been nominated in anticipation of the elevation of Mr. Justice Fortas. As this memorandum will show, it is well established that the President has power to nominate, and the Senate power to confirm, in anticipation of a vacancy. This power exists where it has been agreed that retirement of an incumbent Justice or judge will be effective upon the qualification of his successor. Such power also exists where an incumbent Justice or judge is simultaneously nominated for elevation to a higher position.

## I.

It is not unusual for a Justice or judge to advise the President of his intention to retire and to leave it to the President to propose a timing best suited to prevent an extended vacancy and the resulting disruption of the operation of the court on which he sits. Nomination of a successor in such circumstances is but one example of the power to fill anticipated vacancies.

The more general power will be analyzed below, but it is instructive first to consider two directly pertinent instances for which documentation is available.

Mr. Justice Gray of the Supreme Court advised President Theodore Roosevelt on July 9, 1902, that he had decided to avail himself of the privilege to resign at full pay, and added:

> * * * I should resign to take effect immediately, but for a doubt whether a resignation to take effect at a future day, or on the appointment of my successor, may be more agreeable to you.

President Roosevelt's acceptance, two days later, contained the following passage:

> It is with deep regret that I receive your letter of the 9th instant, and accept your resignation. As you know, it has always been my hope that you would continue on the bench for many years. If agreeable to you, I will ask that the resignation take effect on the appointment of your successor.[3]

Mr. Justice Gray died in September, before his successor, Mr. Justice

---

[2] The term "qualification" or "qualifies" refers in this context to the taking of the two oaths prerequisite to holding Federal judicial office, (1) the oath to support the Constitution required by Article VI, Clause 3 of the Constitution of all officers of the United States, and (2) that required by 28 U.S.C. 453 of each Justice or judge before performing the duties of his office.

[3] See Appendix I, Nos. 4–5 for the pertinent passages of the Gray-Roosevelt correspondence.

Holmes, took office (187 U.S. iii).[4] The Memorial Proceedings in honor of Mr. Justice Gray pointed out that "he submitted his resignation to take effect upon the appointment and qualification of his successor. So he died in office." *See also* Lewis, *Great American Lawyers*, Vol. 8, p. 163.

More recently, Circuit Judge Prettyman advised President Kennedy on December 14, 1961, that he intended to take advantage of the statutory retirement provisions of section 371(b), Title 28, United States Code, and continued:

> The statute prescribes no procedure for retiring; accordingly 1 simply hereby retire from regular active service, retaining my office.
>
> The statute provides that you shall appoint a successor to a judge who retires. Hence I am sending you this note.

President Kennedy replied on December 19:

> It was with regret that I received the notification that you were retiring from 'regular active service.' The way in which you phrased your letter left me with no alternative but to accept your decision.

A few days later, however, President Kennedy sent the following additional note to Judge Prettyman:

> As you know, I have announced that I intend to fill the vacancy which will be created when you retire from active service. However, I hope you will continue in regular active service on the Court of Appeals for the District of Columbia until your successor assumes the duties of office. Your letter does not specifically mention when your retirement from regular active service takes effect, but I have been informed that you have no objection to continuing in your present capacity until your successor is sworn in.
>
> I appreciate your willingness to continue for this limited period in order that the Court may not be handicapped for any time during which a vacancy might otherwise exist.

Judge Prettyman replied to the President that he was "glad to comply with your preference in respect to the date upon which my retirement takes effect. My notice to you was purposely indefinite."[5]

Judge J. Skelly Wright was nominated on February 2, 1962, confirmed on February 28, and appointed March 30. He qualified on April 16, and Judge Prettyman retired as of April 15.

The exchange of communications between Chief Justice Warren and the President must be understood in the light of these precedents. The Chief Justice advised the President of his intention to retire, leaving it to the

---

[4] The circumstances surrounding the Holmes appointment will be discussed *infra*.

[5] *See* Appendix I, Nos. 6–9 for the pertinent passages of the Kennedy-Prettyman correspondence.

President to suggest terms of retirement which would be suitable in allowing sufficient time for nomination and confirmation of a successor without the disruption and over-burdening of the remaining Justices which might result from an extended vacancy, in particular such a vacancy in the office of the Chief Justice. The President suggested that the Chief Justice's retirement should take effect upon the appointment and qualification of his successor. The Chief Justice agreed to this condition.

It is a condition of retirement that was used with respect to the Supreme Court in the case of Mr. Justice Gray. It has been frequently resorted to in the case of other judicial retirements. (For a partial list of retirements by Federal judges effective upon the appointment and qualification of their successors, *see* Appendix II.)

The effect of this form of retirement is that the Chief Justice remains in office until the condition occurs; *i.e.,* until his successor qualifies by taking the oaths of office.

## II.

The power of the President to appoint Justices of the Supreme Court, by and with the advice and consent of the Senate, is specified in Article II, Section 2, Clause 2 of the Constitution. It provides that the President shall

nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law * * *.

Article II, section 3 provides additionally that the President shall "Commission all the Officers of the United States."

As explained in *Marbury* v. *Madison*, 1 Cranch 137, 153–157 (1803), the constitutional appointment process consists of three major steps:

The nomination by the President;

the Senatorial advice and consent (confirmation); and

the appointment by the President, of which the Commission is merely the evidence.

*See also* 4 Op. A.G. 218, 219–220.

There is no indication in this early analysis of the constitutional appointment process that a matured vacancy is a necessary prerequisite. Nomination and confirmation to fill anticipated vacancies are consistent with the constitutional plan, and have been frequent occurrences in our history.

It should be noted that anticipated vacancies may be grouped into two categories: First, those that will take effect on a day certain; *e.g.,* when a resignation is submitted as of a specific date, or a statutory term is about to expire. Second, those that will take effect upon fulfillment of a condition; *e.g.,* when the removal or elevation of the incumbent takes effect, or the appointment and qualification of his successor. Nothing in the Constitution prevents advance nomination and confirmation to fill either

157

category of anticipated vacancies. Logic and experience, running from the earliest years of the Republic to the present, support this conclusion.

If the Senate's power to confirm were conditioned on the present effectiveness of the vacancy, there would continually be gaps in the holding of important offices. In all cases, nomination, confirmation and appointment would have to wait until the incumbent leaves office. Interruptions in the discharge of public business would necessarily result. The needs of prudent administration suggest the unsoundness of a constitutional interpretation that would force this result upon every resignation or retirement of Presidential appointees.

As a matter of fact, from the earliest years the Senate has exercised the power to confirm nominations to offices in which a vacancy in the near future is anticipated to take effect, by action of the incumbent or of the President, as the case may be. The first volume of the EXECUTIVE JOURNAL OF THE SENATE, covering the years from 1789 to 1805, gives instances in which the Senate confirmed nominees in the following situations: To fill a vacancy to be created by the promotion of the incumbent; to replace an official who desired to be recalled; to rename an officer whose term was about to expire; to replace an official who had resigned as of a day certain; and to replace an official about to be superseded. (For details as to these nominations, *see* Appendix III.)

This practical interpretation of the Constitution by the early Presidents and the Senate has been judicially supported in a number of Supreme Court decisions holding that an officer who serves at the pleasure of the President is ousted from his office when the President appoints a successor by and with the advice and consent of the Senate. *McElrath* v. *United States,* 102 U.S. 426; *Blake* v. *United States,* 103 U.S. 227, 237; *Mullan* v. *United States,* 140 U.S. 240, 245. These rulings clearly presuppose that the Senate has the power to confirm a nomination while the incumbent is still in office.

The history of the Supreme Court contains several examples of actions, by Presidents and the Senate, to fill positions of Justices and the Chief Justice in advance of the effective date of the resignation or retirement of the incumbent:

1. Mr. Justice Grier submitted his resignation on December 15, 1869, to take effect on February 1, 1870. President Grant nominated Edwin M. Stanton in his place on December 20, 1869. Stanton was confirmed and appointed the same day, and his commission read to take effect on or after February 1. However, due to his death on December 24, Stanton never ascended to the Bench. *See* Warren, *The Supreme Court—United States History* (1937 Edition) Vol. 2, pp. 504, 506.

2. Mr. Justice Gray resigned on July 9, 1902, effective on the appointment of his successor (*see, supra,* pp. 4–5). On August 11, the newspapers announced that Oliver Wendell Holmes had been "appointed" to succeed Mr. Justice Gray. Bowen, *Yankee from Olympus,* 346. President Roosevelt had in fact on that day given Holmes a recess commission, which

subsequently was cancelled. Holmes, who then was Chief Judge of the highest court of Massachusetts, apparently did not want to serve without prior confirmation by the Senate. *Holmes-Pollock Letters,* Vol. I, p. 103.[6]

As shown above, Mr. Justice Gray died on September 15. The President nominated Holmes on December 2, the day after the Senate reconvened. The nomination was confirmed two days later. JOURNAL OF THE EXECU-TIVE PROCEEDINGS OF THE SENATE, Vol. XXXIV, pp. 5, 21. There can be no question but that President Roosevelt would have submitted the Holmes nomination to the Senate prior to Justice Gray's death, had the Senate then been in session.

3. Mr. Justice Shiras submitted his resignation to take effect on February 24, 1903. On February 19, President Roosevelt nominated (a) Circuit Judge Day to be Associate Justice of the Supreme Court, vice Mr. Justice Shiras; (b) Solicitor General Richards to be Circuit Judge, vice Judge Day; and (c) Assistant Attorney General Hoyt to be Solicitor General, vice Solicitor General Richards. All three nominations were con-firmed on February 23, one day prior to the effective date of Justice Shiras' resignation. JOURNAL OF THE EXECUTIVE PROCEEDINGS OF THE SENATE, Vol. XXXIV, pp. 202, 215.

4. On September 1, 1922, Associate Justice Clarke tendered his resigna-tion as of September 18. On September 5, President Harding nominated George Sutherland to succeed Mr. Justice Clarke. The Senate confirmed his nomination on the same day. 260 U.S. iii. The records of the Depart-ment of Justice indicate that Justice Sutherland's commission was dated September 5, "commencing September 18, 1922."

5. On June 2, 1941, Chief Justice Hughes announced that he would retire from active service on July 1. 313 U.S. iii. On June 12, President Franklin D. Roosevelt nominated Associate Justice Stone to be Chief Justice, and Attorney General Robert H. Jackson "to be an Associate Justice of the Supreme Court, in place of Harlan F. Stone, this day nominated to be Chief Justice of the United States." 87 CONGRESSIONAL RECORD 5097. The Senate confirmed Chief Justice Stone's nomination on June 27, and Associate Justice Jackson's nomination on July 7. 314 U.S. iv.[7]

---

[6] *See also* a letter of August 21, 1902, from President Roosevelt to Holmes:

After consulting one or two people, I feel that there is no necessity why you should be nominated in the recess. Accordingly I withdraw the recess appointment which I sent you, and I shall not send you another appointment until you have been confirmed by the Senate, which I think will be two or three days after it meets. Meanwhile, I strongly feel that you should continue as Chief Justice of Massachusetts.

[7] Chief Justice Stone took his oath on July 3 (314 U.S. iv), but the delay in Justice Jack-son's confirmation until July 7 had no relation to that fact. The Jackson hearings, which commenced on the same day as the Stone hearings, took place over several days, June 21–30, and the Judiciary Committee reported on the nomination June 30. On the same day the Jack-son confirmation by arrangement was put over until the next session for conducting substan-tial business of the Senate, which was July 7. 87 CONGRESSIONAL RECORD 5701, 5756, 5759 (1941).

These precedents relating to Supreme Court appointments thus show instances in which the Senate confirmed judicial nominations which were made in anticipation of a vacancy, either where a resignation or retirement was to take effect on a day certain (Stanton; Day; Sutherland; Stone), or where the nomination was vice an Associate Justice nominated to be Chief Justice (Jackson) or vice a judge nominated to be a Justice (Richards).[8]

As noted earlier, in recent years a very sizable number of Federal judges have retired subject to the appointment and qualification of their successors. The Senate has confirmed their successors in the same way it acts on other nominations which are submitted in anticipation of a vacancy. (*See* examples in Appendix II.) The same is true of the situations, very frequent in the lower Federal courts, in which nominations have been made and confirmed to replace incumbent judges being elevated to higher posts at the same time. Thus, acceptance of the assertion that the Senate lacks the power to confirm Mr. Justice Fortas on account of the condition affecting the timing of Chief Justice Warren's retirement, or that it lacks the power to confirm Judge Thornberry at this time to replace Justice Fortas, would create serious doubt about the validity of the appointments of a sizable portion of the Federal judiciary.

There is nothing inconsistent with the Constitution in the practice of anticipatory nomination and confirmation in the present circumstances. To the contrary, this practice is sanctioned by the Constitution and the experience under it throughout our history. As President Kennedy wrote to Judge Prettyman in 1961, it has the beneficial effect that the "Court may not be handicapped for any time during which a vacancy might otherwise exist."

---

[8] Recently, in connection with a nomination elevating a judge to a higher court and a simultaneously submitted nomination designed to fill the vacancy caused by that elevation, the Senate confirmed the judge who was to fill the vacancy ahead of the one who was to be elevated. These were the nominations, dated October 6, 1966, of John Lewis Smith, Jr., Chief Judge of the District of Columbia Court of General Sessions, to the United States District Court for the District of Columbia, and of Harold H. Greene, vice the elevation of Judge Smith. 112 CONGRESSIONAL RECORD 25524. The confirmation of Judge Greene occurred on October 18, 1966, and that of Judge Smith on October 20. 112 CONGRESSIONAL RECORD 27397, 28086.

## Appendix I

1. Letters from Chief Justice Warren to President Johnson, dated June 13, 1968:

a. My Dear Mr. President:

Pursuant to the provisions of 28 U.S.C., Section 371(B), I hereby advise you of my intention to retire as Chief Justice of the United States effective at your pleasure.

Respectfully yours,
Earl Warren

b. My Dear Mr. President:

In connection with my retirement letter of today, I desire to state my reason for doing so at this time.

I want you to know that it is not because of reasons of health or on account of any personal or associational problems, but solely because of age. I have been advised that I am in as good physical condition as a person of my age has any right to expect. My associations on the court have been cordial and satisfying in every respect, and I have enjoyed each day of the fifteen years I have been here.

The problem of age, however, is one that no man can combat and, therefore, eventually must bow to it. I have been continuously in the public service for more than 50 years. When I entered the public service, 150 million of our 200 million people were not yet born. I, therefore, conceive it to be my duty to give way to someone who will have more years ahead of him to cope with the problems which will come to the Court.

I believe there are few people who have enjoyed serving the public or who are more grateful for the opportunity to have done so than I. I take leave of the Court with the warmest of feelings for every member on it and for the institution which we have jointly served in the years I have been privileged to be part of it.

With my every best wishes for your continued good health and happiness, I am

Sincerely,
Earl Warren

2. Letter from President Johnson to Chief Justice Warren dated June 26, 1968:

161

My Dear Mr. Chief Justice:

It is with the deepest regret that I learn of your desire to retire, knowing how much the nation has benefited from your service as Chief Justice. However, in deference to your wishes, I will seek a replacement to fill the vacancy in the office of Chief Justice that will be occasioned when you depart. With your agreement, I will accept your decision to retire effective at such time as a successor is qualified.

You have won for yourself the esteem of your fellow citizens. You have served your nation with exceptional distinction and deserve the nation's gratitude.

Under your leadership, the Supreme Court of the United States has once again demonstrated the vitality of this nation's institutions and their capacity to meet with vigor and strength the challenge of changing times. The Court has acted to achieve justice, fairness, and equality before the law for all people.

Your wisdom and strength will inspire generations of Americans for many decades to come.

Fortunately, retirement does not mean that you will withdraw from service to your nation and to the institutions of the law. I am sure that you will continue, although retired from active service as Chief Justice, to respond to the calls which will be made upon you to furnish continued inspiration and guidance to the development of the rule of law both internationally and in our own nation. Nothing is more important than this work which you undertook so willingly and have so well advanced.

Sincerely,
Lyndon B. Johnson

3. Telegram from Chief Justice Warren to President Johnson, dated June 26, 1968:

THE PRESIDENT
   THE WHITE HOUSE

DEAR MR. PRESIDENT: MY SECRETARY HAS READ TO ME OVER THE PHONE YOUR LETTER OF ACCEPTANCE OF MY RETIREMENT. I AM DEEPLY APPRECIATIVE OF YOUR WARM WORDS, AND I SEND MY CONGRATULATIONS TO YOU ON THE NOMINATIONS OF MR. JUSTICE FORTAS AS MY SUCCESSOR AND OF JUDGE HOMER THORNBERRY TO

SUCCEED HIM. BOTH ARE MEN OF WHOM YOU CAN
WELL BE PROUD, AND I FEEL SURE THEY WILL ADD
TO THE STATURE OF THE COURT.

EARL WARREN

4. Letter from Mr. Justice Gray to President Theodore Roosevelt,
dated July 9, 1902:

Dear Mr. President,

Being advised by my physicians that to hold the office of
Justice of the Supreme Court for another term may seriously
endanger my health, I have decided to avail myself of the
privilege allowed by Congress to judges of seventy years of
age and who have held office more than ten years. I should
resign to take effect immediately, but for a doubt whether a
resignation to take effect at a future day, or on the appoint-
ment of my successor, may be more agreeable to you.

Wishing that the first notice of my intention should go to
yourself, I have not as yet mentioned it to any one else.

Very respectfully and truly yours
Horace Gray

5. Letter from President Roosevelt to Mr. Justice Gray, dated July 11,
1902:

My dear Judge Gray:

It is with deep regret that I received your letter of the 9th in-
stant, and accept your resignation. As you know, it has always
been my hope that you would continue on the bench for many
years. If agreeable to you, I will ask that the resignation take
effect on the appointment of your successor.

It seems to me that the valiant captain who takes off his
harness at the close of a long career of high service faithfully
rendered, holds a position more enviable than that of almost
any other man; and this position is yours. It has been your
good fortune to render striking and distinguished service to the
whole country in certain crises while you have been on the
court - and this in addition of course to uniformly helping
shape its action so as to keep it up on the highest standard set
by the great constitutional jurists of the past. I am very sorry
that you have to leave, but you go with your honors thick upon
you, and with behind you a career such as few Americans have
had the chance to leave.

With warm regards to Mrs. Gray, believe me,

Faithfully yours,
Theodore Roosevelt

6. Letter from Judge Prettyman to President Kennedy, dated December 14, 1961:

Dear Mr. President:

On October 17th last, I had been on the court sixteen years. In August I was seventy years old. Being thus qualified I wish to take advantage of the statute (Sec. 371(b) of Title 28, U.S. Code) which says a judge with such qualifications "may retain his office but retire from regular active service." The statute prescribes no procedure for retiring; accordingly, I simply hereby retire from regular active service, retaining my office.

The statute provides that you shall appoint a successor to a judge who retires. Hence I am sending you this note.

With great respect I have the honor to be

Yours sincerely,
E. Barrett Prettyman

7. Letter from President Kennedy to Judge Prettyman, dated December 19, 1961:

Dear Judge Prettyman:

It was with regret that I received the notification that you were retiring from "regular active service." The way in which you phrased your letter left me with no alternative but to accept your decision.

I was pleased, however, that you were retaining your office and would be available to continue your distinguished service on the Bench. Your record for justice and humanity, your efforts in behalf of more efficient administration of the law, and your legacy of sound precedent entitle you to some relaxation from the demands of regular active service.

I am happy that you have elected to continue in the capacity of chairman of the Administrative Conference. I am looking forward to receiving the recommendations and suggestions which flow from the meetings of the Conference. It seems to

164

me that this offers an opportunity to make a major contribution toward the improvement of the regulatory agency procedures. Under your leadership I am sure that the Conference will take advantage of that opportunity.

With every good wish, I am

Sincerely yours,
JOHN F. KENNEDY

8. Letter from President Kennedy to Judge Prettyman, dated December 26, 1961:

Dear Judge Prettyman:

As you know, I have announced that I intend to fill the vacancy which will be created when you retire from active service. However, I hope you will continue in regular active service on the Court of Appeals for the District of Columbia until your successor assumes the duties of office. Your letter does not specifically mention when your retirement from regular active service takes effect, but I have been informed that you have no objection to continuing in your present capacity until your successor is sworn in.

I appreciaste your willingness to continue for this limited period in order that the Court may not be handicapped for any time during which a vacancy might otherwise exist.

Sincerely,
JOHN F. KENNEDY

9. Letter from Judge Prettyman to President Kennedy, dated January 2, 1962:

My dear Mr. President:

I have your note of December 26th. I am glad to comply with your preference in respect to the date upon which my retirement takes effect. My notice to you was purposely indefinite. I shall advise the keepers of the records to enter my retirement upon the date when my successor qualifies.

May I take advantage of this opportunity to express to you my deep appreciation of your generous remarks regarding my service.

With great respect, I am

Yours sincerely,
E. BARRETT PRETTYMAN

## Appendix II

By letter dated February 24, 1968, Judge Wilson Warlick, North Carolina, Western, retired effective upon the appointment and qualification of his successor. James McMillan was nominated on April 25, appointed June 7, and entered on duty June 24. Judge Warlick retired June 23.

By letter dated March 30, 1967, Judge Frank M. Scarlett, Georgia, Southern, retired effective upon the appointment and qualification of his successor. To date no one has been appointed and he is still on the bench in regular service.

By letter dated November 28, 1966, Judge Frank A. Hooper, Georgia, Northern, retired effective upon the appointment and qualification of his successor. Newell Edenfield was nominated May 24, 1967, appointed June 12, and entered on duty June 30. Judge Hooper retired June 29.

By letter dated September 21, 1965, Judge William G. East, Oregon, retired effective upon the appointment and qualification of his successor. Robert Belloni was nominated February 21, 1967, appointed April 4, and entered on duty April 10. Judge East retired April 9.

By letter dated March 12, 1965, Judge William C. Mathes, California, Southern, retired effective upon the appointment and qualification of his successor, or not later than June 30, 1965. Irving Hill was nominated May 18, appointed June 10, and entered on duty June 25. Judge Mathes retired June 9.

By letter dated February 19, 1964, Judge Walter M. Bastian, D. C. Circuit, retired effective upon the appointment and qualification of his successor. Edward A. Tamm was nominated March 1, 1965, appointed March 11, and entered on duty March 17. Judge Bastian retired March 16.

| NAME | COURT | ANNOUNCEMENT OF RETIREMENT | EFFECTIVE DATE OF RETIREMENT |
|------|-------|---------------------------|------------------------------|
| Reid, Silas | Alaska | 6/14/09 | 7/1/09 |
| Cooley, Alford | New Mexico | 6/6/10 | 7/10/10 |
| Brawley, Wm. | S. Carolina | 4/18/11 | 6/14/11 |
| Donworth, George | Washington | 1/24/12 | 7/8/12 |
| Locke, James | Florida, So. | 7/9/12 | 9/2/12 |
| Peele, Stanton | Court of Claims | 1/2/13 | 2/11/13 |
| Stuart, Thomas | Hawaii | 8/8/16 | 11/23/16 |
| Whitney, Wm. | Hawaii | 1/25/17 | 3/19/17 |
| Shepherd, Seth | D.C. Ct. Appeals | 5/1/17 | 9/30/17 |
| Dyer, David | Missouri, E. | 5/15/19 | 11/3/19 |
| Batts, Robert | Fifth Circuit | 8/22/19 | 4/9/20 |
| Davis, John | New Jersey | 6/5/20 | 6/12/20 |
| Riner, John | Wyoming | 10/13/21 | 10/31/21 |
| Rudkin, Frank | Washington | 1/17/23 | 1/18/23 |
| Anderson, Albert | Seventh Circuit | 10/31/29 | 11/6/29 |

## Appendix III

Examples in Vol. I of the JOURNAL OF THE EXECUTIVE PROCEEDINGS OF THE SENATE, of Senatorial Confirmations in Anticipation of a Vacancy.

I.  Nominations vice an incumbent who is being elevated at the same time.

December 21, 1796, p. 216.[1]
I nominate the following persons to fill the offices annexed to their names, respectively, which became vacant during the recess of the Senate:

---

[1] The page numbers refer to the pages of Volume I of the JOURNAL OF THE EXECUTIVE PROCEEDINGS OF THE SENATE.

* * *

Jonathan Jackson, of Massachusetts, to be Supervisor for the district of Massachusetts, vice Nathaniel Gorham, deceased.

John Brooks, of Massachusetts, to be Inspector of Survey No. 2, in the district of Massachusetts, vice Jonathan Jackson, appointed Supervisor.

Samuel Bradford, of Massachusetts, to be Marshal for the district of Massachusetts, vice John Brooks, appointed Inspector of Survey No. 2, in that district.

* * *

Confirmed December 22, 1796, p. 217. A number of similar nominations and confirmations took place in February, 1801, in connection with the staffing of the circuit courts. pp. 381–385.

II. Nominations vice incumbents who desire to be relieved of their duties.

May 19, 1796, p. 209

I nominate Rufus King, of New York, to be Minister Plenipotentiary of the United States at the Court of Great Britain, in the room of Thomas Pinckney, who desires to be recalled.

David Humphreys, of Connecticut, to be the Minister Plenipotentiary of the United States at the Court of Spain; William Short, the resident Minister to that Court having desired to be recalled.

Confirmed, May 20, 1796, p. 209

III. Nominations to fill terms about to expire.

1. January 10, 1798, p. 258

I nominate the following persons to be Marshals of the United States;

John Hobby, for the district of Maine; Philip B. Bradley, for the district of Connecticut; Thomas Lowry, for the district of New Jersey; Samuel McDowell, Jr., for the district of Kentucky: each for the term of four years, to commence on the twenty-eighth of January, current, when their present terms will expire.

Confirmed, January 12, 1798, p. 258.

2. December 9, 1799, p. 325

I nominate * * * David Mead Randolph the present Marshal of the district of Virginia, for the term of four years, to commence on the 15th instant when his existing commission will expire.

Confirmed, December 6, 1799, p. 326.

3. February 4, 1803, p. 441

I nominate * * * William Henry Harrison, to be Governor of the Indiana Territory from the 13th day of May next, when his present commission as Governor will expire.

Confirmed February 8, 1803, p. 442.

IV. Nominations to fill vacancy which will be caused by a resignation on a future day certain.

May 7, 1800, p. 352

I nominate the Honorable John Marshall, Esq. of Virginia, to be Secretary of the Department of War, in the place of the Honorable James McHenry, Esq., who has requested that he may be permitted to resign, and that his resignation be accepted to take place on the first day of June next.

May 12, 1800, p. 353

I nominate the Honorable John Marshall, Esq., of Virginia, to be Secretary of State, in place of the Honorable Timothy Pickering, Esq. removed.

The Honorable Samuel Dexter, Esq. of Massachusetts, to be Secretary of the Department of War, in the place of the Honorable John Marshall, nominated for promotion to the Office of State.

Confirmed, May 13, 1800, p. 354.

V. Nomination to fill office, the incumbent of which is to be superseded.

December 23, 1799, p. 329

I nominate Ambrose Gordon, of Georgia, to be marshal of the district of Georgia, in the place of Oliver Bowen, to be superseded.

Confirmed, December 24, 1799, pp. 329–330.